UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDICAID CONSUMERS FOR CONTINUITY OF CARE, et al., | Case No. 1:25-cv-00565 |
| Plaintiffs, | |
| v. | **DECLARATION OF**<br>**KEN STERNFELD** |
| JAMES V. MCDONALD in his capacity as the Commissioner of the New York State Department of Health, | |
| Defendant. | |

1.      I am the President of the Medicaid Consumers for Continuity of Care ("MCCC"). I live in Uniondale, New York and receive care in my home under New York's Consumer Directed Personal Assistance Program ("CDPAP") to navigate the daily obstacles I face as a person who is permanently disabled from the waist down.

2.      I submit this Declaration in support of the Plaintiffs' Motion for a Preliminary Injunction in the above captioned case, and in opposition to Defendant's Motion to Dismiss.  I have personal knowledge of the matters set forth in this Declaration.  This Declaration is intended to supplement my initial Declaration, dated January 17, 2025 (Dkt. 7).

3.      The mission of MCCC is to advocate on behalf of people living with chronic illnesses and/or physical disabilities who receive self-directed home care through CDPAP, and to ensure their rights are protected.  Five members of MCCC have been publicly identified in this litigation.  MCCC has additional members as well.  This includes members with limited English proficiency.

4.      With less than six weeks until the March 28 deadline, Public Partnerships, LLC ("PPL") and the New York State Department of Health ("NYSDOH") have failed to ensure a smooth implementation of the CDPAP Amendment and to assist consumers and their personal assistants with the transition.  As a result, tens of thousands of chronically ill and disabled New Yorkers and their personal assistants are destined to be shut out of CDPAP on April 1, 2025, when PPL takes over as the single statewide fiscal intermediary.

5.      NYSDOH has placed the onus on consumers to complete the transition by March 28, 2025.  However, PPL has not met its responsibility to proactively inform consumers and their personal assistants about the transition.

6.      As far as I am aware, most or all MCCC members had no idea that their existing fiscal intermediaries were being forced out of business and that they needed to switch to a new fiscal intermediary until a consumer advocate reached out to them to join this lawsuit.  I am aware of at least five other consumers, including individuals who have limited English proficiency, who I am confident are *still* unaware of the CDPAP transition.  These individuals are not currently MCCC members.

7.      The transition to PPL as the single statewide fiscal intermediary officially began on January 6, 2025.  Yet to date, I do not recall receiving any direct outreach communications from PPL or NYSDOH about this transition, including emails, phone calls, text messages, or direct mail.  PPL's outreach campaign has fallen short.  Its chosen print, radio, social media, and streaming television ads have failed to effectively reach consumers.

8.      Certain MCCC members, like many CDPAP consumers, have communication and language barriers, such as limited English proficiency, cognitive disabilities, and visual impairments that require special accommodations.  PPL's outreach efforts have been ineffective

in reaching consumers who speak a language other than 12 languages selected by PPL for its advertisements (assuming they even see or hear them which is doubtful), or consumers like MCCC member Ann Wegman who is blind and has not been provided with support by PPL.

9.      I called PPL's support center and spent close to an hour on the phone with a representative.  I left the conversation confused about the transition.  The representative was not able to provide clear answers to my simple, straightforward questions related to the enrollment and onboarding timeline for my personal assistants.  I was told that the information could not be given to me unless I initiated my enrollment as a consumer.   Among other questions, I left the conversation unsure about how much money my personal assistants would be paid after March 31, what benefits they would receive, and how long their specific enrollment and onboarding training would take.  I understand the Defendant in this case has said that PPL has now announced what personal assistants will be paid based on geographic region, but that evidently must not be correct because the PPL representative who spoke with me did not know the answer and said that I could not know the answer until after I enrolled.  As the call ended, the representative told me that I had no choice – If I did not enroll in PPL, I would lose my CDPAP services and would have to pay out of pocket for my personal assistants after March 31.  I then asked to speak with a supervisor with the hope of getting my questions answered.  The representative took my contact details, but I have yet to hear back from PPL.  This planned transition represents an imminent healthcare threat for me and members of MCCC.  We are six weeks – 42 days – from what will be a healthcare emergency in the State of New York.

10.      NYSDOH has agreed to a rushed transition which is putting tens of thousands of chronically ill and disabled New Yorkers' home care services at risk, yet PPL's support center representatives cannot provide the consumers and their personal assistants with rudimentary

information about the transition and registration. Despite all the evidence that the transition is going terribly, NYSDOH appears to be approaching the March 28 deadline with its head in the sand. NYSDOH is insisting on moving forward with the elimination of hundreds of community-based fiscal intermediaries and imposing on CDPAP consumers PPL as the single statewide fiscal intermediary. As a result, tens of thousands of consumers and their personal assistants will suffer tremendously.

11.　　My hope is that a pause would allow all parties, including consumers, to have a seat at the table to seek a suitable solution in advance March 28 deadline that threatens to jeopardize the CDPAP services and the well-being of vulnerable consumers.

12.　　MCCC is a new organization. As stated in the Complaint, MCCC was formed by consumers, including myself, when we were alarmed by the CDPAP Amendment's botched implementation. Although we are aware of the PPL transition, many other consumers are not. We know that after March 31, 2025, many of them will be left without home care. I am presently attempting to establish a way for MCCC to be available as a resource when these consumers find themselves without their CDPAP home care after March 31, 2025. Once this resource is up and running, I expect it to be inundated with calls and emails by panicked consumers. As such, there will be harm to MCCC because it will have to expend resources to respond to these consumers. We will need to obtain funding to support this ongoing MCCC work.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_____February 18_____, 2025


Ken Sternfeld